The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. We want to welcome everyone to the Fourth Circuit this morning. We have three interesting cases and a host of good lawyers. And we'll call our first case, Kale v. Scott. Mr. Bannius. Good to have you with us, Mr. Bannius. Good morning, Your Honors, and thank you, Your Honor. My name is Brad Bannus. I represent the appellants in this case. 1976, Congress amended the statute, 8 U.S.C. 1255A. Colloquially, this is the statute that creates a benefit called, most people call it a green card. They eliminated the requirement that, at the time of approval, a applicant's priority date, the date where they filed the application, be, quote, immediately available under the Department of State's visa bulletin. This wasn't arbitrary. This was from 25 years of experience in trying to work through different iterations of this requirement. 1952, they required a visa to be, quote, immediately available at filing and approval. 1965, they changed it to just having that requirement at approval. In 1976, the House report makes it clear, we are finally going to designate and decide whether a visa is immediately available at filing, and once it's filed, we're going to make a decision. The agency hasn't passed a regulation, hasn't amended the statute. Instead, they've continued to apply the policy that Congress repealed through sub-regulatory acts, through sub-regulatory guidance, and so we do not challenge a regulation. We do not challenge a statute. We challenge the agency's refusal to make a decision on my client's applications. What is the ultimate remedy you want? Let's assume we get past the jurisdictional problems. Let's assume we get all the way to final judgment in this case. What is the remedy you want from the district court? I'd like them to compel a decision on my client's green card applications. And what if the decision is there's no visa available for your clients because the State Department limits the number of visas and you're not at the front of the line? What if that's the decision? That would be an unlawful denial, Your Honor, and if the agency put them in removal proceedings, they would challenge that. That would be a legal question. This court would clearly have jurisdiction. So the problem is it just seems to me that you want one of two things, neither of which seems tenable. You either want the court to order the executive branch to issue more visas than Congress has authorized the executive branch to issue, or you want your clients to jump the line in front of people who filed before your clients. Your Honor, I don't want either of those things. Okay. Explain to me how you can get what you want without doing one of those two things. Absolutely, Your Honor. The statutory terms are available and immediately available. And then there's a statute that says how many visas can be issued, right? That's correct. That statute, 8 U.S.C. 1152, defines the numerical limitation of the total number of visas that are available in each fiscal year. Today, where we sit, there are tens of thousands of visas available under the second employment-based preference because they haven't run out of visas for fiscal year 2025 yet. Those visas are available. Okay, but isn't it the case that there are more people who want those visas than there are the number of available visas? Yes, there are, Your Honor. And aren't there more people who want those visas who filed earlier than your clients? And later than my clients. It doesn't really matter about later. I'm just saying, basically, again, it seems to me that you either want to increase the number of visas or you want to jump the line, but I don't see how you're not asking a court to give you the ability to do one of those two things. Your Honor, there are visas available, and I don't think my opposing colleague would disagree with that. So the Department of State has already made a decision, Your Honor, that my clients are at the front of the line. They did that in 2022 by saying, we are providing green cards and immigrant visas to people who filed up through December of 2014. That was the Department of State's decision, and I'm asking this court to respect that decision and the agency to respect that decision. My clients filed in August of 2014, and so there are visas available. They are approvable. The statute, nothing in the statute, the regulations, or the policies require there to be a visa bulletin date that is later than my client's filing date at approval. That's what we're here to discuss. And the agency, Congress rejected that, repealed that requirement. The agency just never changed their position. I believe in the record there's a memo from legacy INS, right? INS is no longer around, that says, we recognize that Congress changed this. We are not changing our position. And that probably would have been the appropriate time to challenge this change in policy. However, it didn't happen. I wasn't born yet. And today we are in an unprecedented situation where the agency's policies, this policy in particular, is the cause of this backlog that for Indian nationals, for my clients, if they have to wait, it is not hyperbole to say they have to wait another 20 years for an immigrant visa, even though the statute says there doesn't have to be an immigrant visa immediately available at approval. So can I ask you to talk about the jurisdictional question? Yes, Your Honor. So why isn't, in the complaint you say, USCIS is issuing letters indicating that their adjustment of status applications can no longer be decided because they're subject to the adjudications hold policy. That's directly from your complaint. Why isn't that a judgment or decision within the meaning of 8 U.S.C. 1252A2B? First off, there is, I call it a policy, Your Honor, but there is, it is not embodied in the statute or regulation or even. Well, but they told you. So I guess I'll say it's not. In some cases where courts, including this one, have said you can suit a challenge in action, I'm thinking of some FOIA cases I guess I've sat on where you submit a FOIA request and a month goes by, a year goes by, three years goes by, and you hear nothing back from the agency. The agency just, as far as you're telling, may have forgotten you or be ignoring you, and we say you can bring action to compel them to do something. That's not what they did here. USCIS gave you an answer to what they're doing. You just don't like the answer they gave you, but that sounds like an action or a judgment. They've decided they're not going to do this until X happens. Why isn't that exactly the kind of thing you're not allowed to challenge? Well, 1252A2B also requires that judgment to be discretionary. This is not a discretionary choice. The agency's litigation position has been that they're exercising discretion here, but the facts are that the agency sees this as a legal eligibility criteria, and they are, like in this court's case of Perez v. USCIS, they've added something to the statute. They've added this requirement that there be a visa immediately available at approval that Congress repealed. So to your question, in the Lovo case that came out last year, I believe it was Judge Davis said, we can't define action to mean inaction. In here, we cannot define... But you said it's a litigating position. Isn't it in the USCIS policy manual? No. Volume 7, Chapter 6, Section C5? Your Honor, I'm not going to doubt that specific site, but... That's not a litigation position then, right? If it's in a policy manual, it is not merely a litigation position. Your Honor, if you look at the documents attached to the motion to strike that happened last week, you will see the agency's actual position here. That actual position is that they will deny naturalization. They will deny naturalization if someone acquires permanent residency based on a visa that's not immediately available, because they say it's a legal requirement. There are two decisions in there where the agency is rescinding green cards because they, under their own policies, jumped the gun and made a decision before the visa was immediately available. To agree with you, would we have to split with the 1st, 3rd, 5th, 8th, and 9th circuits on this question? And the 11th. They ruled against me last night. I would say this. The 9th circuit didn't get to the jurisdictional issue. Okay, well, maybe we'll tentatively mark off the 9th. So how about the 1st, 3rd, 8th, and 11th? The 1st circuit assumed jurisdiction. Cool. How about the 3rd, 5th, 8th, and 11th? 3rd, 5th, 8th, 11th. Yes, Your Honor. And how many circuits have agreed with you? None, Your Honor. Not until this one. So we'd have to create a circuit split. Your Honor, yes. And I think when I'm asking you to make the right decision, I think that's this court's role. This court has an independent duty. Well, you're entitled to ask for it. There's no question about it. I mean, yeah, if you're right, they'd do that. And I think the 4th circuit has a different law than the 5th and the 8th and the 3rd. What about these? He mentioned that motion to strike. Is any of that stuff in the record in this case? It's not in the record, no, Your Honor. So there's a provision in Rule 10 that lets you supplement the record in limited circumstances. Otherwise, the record on appeal is fixed when it comes up here. And we don't often supplement records on appeal. We look at the record as the lower court. Here, Judge Flanagan had a record. She decided the case. You want us to decide the appeal based on a different record. Why would we want to do that? It wouldn't be fair to her. It wouldn't be fair to the lower court ever to do that. I mean, issues are supposed to be presented and then come here for review on the same record. And, Your Honor, I would respond to that in two ways. First is that this case was dismissed at the 12B stage. I made allegations that they consider this a legal requirement. Yeah, but you didn't even do it right. I mean, I'm saying you didn't make a Rule 10e motion to supplement the record. You just slapped it on the back of whatever you call it, the motion to do something. Your Honor, we are asking the question... Motion to file. We are asking the court to take judicial notice. Take judicial notice. The court can take judicial notice. That's your alternative request on that, was to take judicial notice. In our response brief, that's our only argument. And we would suggest that judicial notice can be taken of something that's undisputed, that's on a court record, and where the other party has fair notice of it. These are documents that USCIS itself issued. They are defendants in the lawsuits where these are in the record. And I don't know how they can credibly dispute that these exist and this is their position. And so I understand, Your Honor, you would prefer me to move to supplement the record. I don't think I could have brought it. To the extent in my complaint, my job is to allege things with good faith. I alleged this, and Judge Flanagan, I would argue, violated the Rule 12 standard by not assuming it was true. These documents from just the past couple of weeks, Your Honor, demonstrate that... They weren't before Judge Flanagan. They weren't, no, Your Honor. That's right. Our allegations was... I'm sorry, they weren't before Judge Flanagan. You want us to decide these issues on something that she didn't have presented to her. Your Honor, I would... And the appeal is from her decision. That's correct, Your Honor. And I would suggest that I didn't know the government would misrepresent its position in federal court. And so I didn't think it was necessary at the time of the case. Counsel, maybe help me a little bit. You would agree that if your client had been out, just straight out denied, we wouldn't have jurisdiction to review that? Your Honor... If they said no. My question is very simple. Let's try to keep it simple. If they had said no to the visa, green card, we wouldn't have jurisdiction to hear that, right? Under this court's recent decision in Scheibon, I think that's right. Okay, all right. However, this court would have jurisdiction to review it if the agency would follow its current policy... Okay, well... I'm sorry. No, we're good. I haven't got to that point. We got that. Now, so you're saying, really, for you to get the jurisdiction, you'd have to say that we're allowed to hear a case where they abused that discretion, right? Your Honor, I think that there's no discretion involved here. It has to be somewhere. It's pretty clear in terms of that's their job to do that. That's really the executive function of the government. It's not judicial until it gets to the point where we have a window to jump in, but we just admitted that if they just outright said no, we don't have discretion, and so if they give you the... That's the worst thing that could happen to you. They say, no, if we don't have discretion there, then you got to back it up something less. Is that less remedied based on abuse of discretion? Your Honor, two things. If we look at the statute 8 U.S.C. 1255A... I'm looking at the statute. The question is, do you have to establish or make a case of abuse of discretion for us to have jurisdiction to hear this case, to grant the relief you want? No, Your Honor. Oh, we don't? I don't think you do. So how do you do the end around where we don't have discretion to help you if you lose completely, but somehow in the process we do have jurisdiction without your showing any abuse of that discretion? So to get in front of this court under Chabon, they would deny the application. They would put my clients in removal proceedings, and then we would come through a petition for review. Oh, absolutely, yeah. This is not the end of the... Whatever happens here today is not the end of the road. I don't know what's going to happen because we haven't decided, but there is a process where you can come into court, but you're not there. Well, Your Honor, if CIS denies this, it would be an unlawful denial, not a denial based on discretion. If you look at the agency's own regulations, it's 8 CFR 103.2. They identify a class of decisions that have two parts to it. One is the legal eligibility, and then the other is the discretion eligibility. This is a legal determination. And so under the Supreme Court's case from last year, Wilkinson, that recognized that Patel was limited to factual determinations, it said we can look at mixed questions of fact and law under 8 USC 1252A2D2, and they recognized jurisdiction over it 100%. This would fall into that category of cases. I see my time is up, so I will sit down. Thank you very much. Thank you, Your Honor. Ms. McTeague. Good morning, Your Honors. May it please the court, Alexandra McTeague on behalf of the government. The district court was correct that there is no jurisdiction to review the appellant's claims in this action, and this court should affirm that decision. The appellants are challenging this retrogression hold policy where they say that USCIS's decision to allow an application to remain pending when visa numbers retrogress is inaction, not action under 1252A2B and should be reviewed by this court. But in fact, USCIS's decision is discretionary. It falls within the discretion granted to the Attorney General or the Secretary of Homeland Security under 1255A, which says that status may be adjusted in the discretion of the Attorney General or Secretary of Homeland Security under such regulations as he may prescribe. And so what we're dealing here with is a particular scenario within the visa allocation system where applicants have a priority date, they understand from the State Department's estimates that they are current, they apply for adjustment of status, and while that application is pending and being adjudicated, it turns out the estimates are wrong and the numbers, the priority dates, move backwards. USCIS can't grant that application without a visa, because there are limits, statutory limits on the total number of visas, on employment-based preferences, and they can't allow people to jump the line because visas are to be allocated in priority date order. And so they have a decision. They could deny the application or... Which arguably would be more consistent with what the statute says, right? When I read this the first time, I thought, the statute seems to say you can't even take their application until there's a visa available. And so we would say that that is one of the reasons that this is a discretionary decision that they've made. They created a third choice here. Grant, deny, or allow it to remain pending when there is not some other reason to deny it until a visa becomes available. This is not a case of inaction. I mean, doesn't the statute say the visa has to be available at the time of application, right? It does say that there should be a visa immediately available. Not that there should be. It says there has to be, right? Yes. So, I mean, in some ways, a literal reading of that suggests that if there's not a visa available, you just have to deny the application at the front end because, denied, there's no visa available. But they don't accept the applications if the priority date is not current. Can I ask you, just flip this around, but then it changes and it retrogresses back. Do you agree with, at least at a high enough level of generality, do you agree with the plaintiffs that there is a statutory obligation to eventually adjudicate every adjustment of status application that's filed? A statutory obligation? No, Your Honor. You could just sit on them forever? So, 1255A says that the adjustment process is discretionary to the Attorney General in the regulations that he may prescribe, and there is nothing in 1255A that actually says what that process must be or what must actually happen. And the First and the Ninth Circuits have looked at that and said, it doesn't prescribe any details of the process. 1255A doesn't say a decision must be made. This is a discretionary decision. But isn't that implicit? I mean, that just seems extraordinary and bizarre to say that you can have a process where people submit applications but there's no duty to decide them ever. Right? We will receive your application. What I will do is I will take your application, I will put it in a file, and then I will never look at it again. That would be, in your view, an acceptable approach under the statute. That's not the approach we have. Or I'd shred it. I'd put it through a shredder. I've accepted your application. Here's the shredder. I'll walk it over to the shredder. I'll place it in the shredder. And that's something we can do? Your Honor, they haven't identified a duty. I'm not saying that that's what's happened here. Correct. And it's not what's happened here. This is not a case of inaction. This is a case where they actually took these applications in. But that's a different argument. I first asked you if there is any duty to do anything ever. And then you're telling me that's not what they're doing here, which, to be fair, I'm not suggesting it is what we're doing here. But I'm asking you the threshold question of is there a duty to do something eventually. There is no duty under 1255A for the Attorney General to grant any... Let me rephrase that. Do you think that under our precedent we would have jurisdiction to consider a pure inaction claim? I... I think... I think we've said that we do. A pure inaction claim. A pure inaction claim, I think, under your precedent... Under your precedent, so under LOVO, LOVO suggested that the meaning of action under 1252 does not include inaction. And so LOVO held that if there were a duty, then you could have jurisdiction over... We'd have jurisdiction. Now, we might decide there's no duty, but we would have jurisdiction to consider that claim under LOVO. If there were no duty to make a decision, then there's no jurisdiction. You make this standing argument in your brief which strikes me as fatally confusing standing with the merits. You're saying, like, there's no standing because it's not the executive's fault, it's Congress's fault. And then I think, yeah, but ex parte... We have all kinds of legal fictions where the executive branch could say, it's not our fault, it's the legislative branch's fault, or it's the judicial branch's fault, or it's the state's fault. And, I don't know, ex parte Young says that's not a standing problem, right? If it's a problem, it's a merits problem, but that's not a standing problem. So I would say here it is actually a standing problem because the problem is that there is no visa available to these individuals because they're not at the front of the line. And that is the problem with why they have no standing. Because it's not redressable, in your view? Like, put this into the language of Lujan. How is that a standing problem? It's both not traceable and not redressable. It's not traceable because the problem is the limits of the visas available. It's not that USCIS has, you know, independently decided to stop doing something. It's that they can't do it because there is no visa available to these folks. So it's not traceable to USCIS because there's just a problem with the visa. I just feel like I could instantly come up with dozens of examples where the executive branch could argue the same thing, that there's no standing. Like, the legislature passes a discriminatory tax and someone files suit to challenge that. And the executive branch says, look, it's not my fault that we have to charge you more than your neighbor. The legislature has told us we have to charge your neighbor less. I can't fix the problem. I am but powerless. And no one would take seriously that being a standing problem. But I think it's also not redressable, right? Because a decision by this court isn't going to get the appellants what they want. Now, Mr. Banas is up here saying, well, they could end up in removal proceedings. But it's not clear to me that the appellants are actually seeking to end up in removal proceedings. Right now they are in a lawful and approved status within the United States. They have the ability to apply for work authorization. And that work authorization allows them to switch jobs. And it also provides them with travel authorization. How is that a standing problem? No, but so what I'm saying is that if this were redressable in the way that the appellants want, they're really looking for a visa, right? They're not looking to lose all their benefits. They're looking for a visa. And the reason you're saying that my standing argument is intertwined with the merits is because of this merits argument that has been made about you have to allocate a visa when the application is filed. Right. And maybe they're right about that. Maybe they're wrong about that. I'm not, for purposes of this question, saying whether they're right or wrong about that. But that's a merits problem, not a standing problem. If it's a problem, that's a merits problem, not a standing problem. Or at least I'm predisposed to think that's a merits problem, not a standing problem. If you would like to try to convince me why that's a standing problem, but I'm genuinely not understanding why that would be a standing problem. And so from our perspective, it's a standing problem because it's not truly redressable in this case. But they allege it is redressable. They say there are, in fact, visas available. And you say, no, there aren't because Congress limits them. And again, maybe you're right about that. Maybe they're right about that. But that strikes me as a merits problem, not a standing problem. And I do think the two are intertwined in the way that they have framed this case. And going to that, whether visas are available, just because there are visas made available every year by the State Department, doesn't mean that they are immediately available to these applicants because, again, we have an issue of priority date order. The visas are supposed to be allocated in the priority date order. And the entire problem here, you know, Mr. Mann has said that the State Department made a decision that these folks could file their applications. But what the State Department made were estimates. The State Department estimated how many visas were going to be available, how many people they thought might apply for them, and what the priority date cutoff was going to be. When they make those estimates, they're taking in information not just from adjustment of status in the United States, but from the consulates around the world. And those are just estimates. They're not guarantees. They're not decisions on a particular applicant. And so those estimates sometimes turn out to be wrong. And that is what has happened in all of these cases. The estimates were wrong, and the dates retrogressed, so the applications couldn't be approved. But there's no decision that was made here by the State Department. There's just nothing available for these folks right now. And that's why their applications can remain pending until a visa becomes available. And we believe this is a case of no jurisdiction under 1252 A2B2. This is a decision or action by USCIS that is discretionary to allow these to remain pending. It also could be under 1252 A2B1 that it's a judgment regarding the adjustment of status applications. So you want us to dismiss or say the District Court was correct in dismissing. Is that correct? You want us to affirm the District Court? Yes, Your Honor. And what do you want us to do with this Appendix A that the other side submitted? I'm sorry, Your Honor? These other documents that are subject to the motion to strike. So we don't believe the Court should consider them because they're not part of the record. We also don't think they're appropriate for judicial notice as the appellants argue because they're not relevant facts. It's about people who are not involved. Your position is we need to grant the motion to strike and affirm the District Court. Yes, Your Honor. You said they're not appropriate for judicial notice which is an argument. But then you said they're not appropriate for judicial notice because they're not relevant. That strikes me as a different argument. It strikes me as if something isn't appropriate for judicial notice if it is not a widely available fact whose reliability is not subject to reasonable dispute. They don't matter. They don't matter just seems like you shouldn't consider them because they don't matter. But that's not an argument that you shouldn't consider them at all. Or I guess it's not an argument that you should strike them. It's just an argument that you should ignore them. So, Your Honor, I believe under Federal Rule of Evidence 201, judicial notice applies to adjudicate to facts which are facts that are relevant to the particular dispute. I'm not sure it matters where you ultimately end up. I think you can get beyond that because these are documents that some of them are redacted. They pertain to people who are not in this litigation. They pertain to issues that are not in this particular litigation with different facts. We don't really know what all of those facts are based on the documents presented. The plaintiff or appellants have not identified particular facts within the documents that they want judicially noticed. I mean, they have the burden on that. Just because they were attached to a court filing doesn't make them the type of document that you would judicially notice. You may judicially notice a court's docket, for example. But that doesn't mean that every statement within the filings of that docket is something that could be judicially noticed. From our perspective, there are a lot of reasons why judicial notice is not the right way to go. Yes, we think the motion to strike should be granted. The district court's decision should be affirmed. There is no jurisdiction to review this because it is a discretionary decision by USCIS. We also think on the merits, this idea that a visa should be assigned at filing is just not supported by the statute, which doesn't talk about, I'm sorry, that it has to be assigned at, yes, that it should be allocated at filing. It just isn't supported by the statute because the statute doesn't require that. And in fact, 1255B says that the State Department shall allocate a visa when an application is approved. So when you read the two together, it really is the case that visa allocation isn't at the front end. Not to mention that Mr. Bannis relied on a 1976 amendment, which has now been in place for over 50 years. And so Congress has never sought to change this language since then. And so, we would ask that you affirm the district court's opinion and that there's no jurisdiction. Unless there are any other questions. I understand in the stopgap you have is you allow certain things to benefits to occur, like changing jobs and even traveling. Those things, is that automatically given while you're waiting in the queue? It's not automatic. Those are things they would have to apply for, but they're eligible to apply because they're waiting in the queue. And that's another level of discretion, whether or not you give that. I confess I don't know the details of how those things are processed. What about colleagues that it could be 20 years waiting. Is that true? Your Honor, I don't have any way to know exactly how long this is going to be, since it's all based on State Department estimates. I can say that over time the priority dates do generally move forward. I did check them last night. And so at this point in March, the final action dates were December 2012 and February 2013. And then in April, the final action dates will be January 2013. So just so we're clear, that means that we are currently granting visas. These are people from India? Yes. So we are currently granting visas for people who applied 12 years ago? I think that's right. And these the appellants applied in August of 2014. So they are still off of the final action dates for EB2 or EB3, but they're not that far off at this point. Am I correct also that a person, hypothetically, a person could be near the point where they're about to get their visa that the State Department could decide that we're not going to give any visas to that country? Is that right? I don't know exactly what the State Department decides about visas to particular countries. I do know that we're talking about visas to India. But you do know that you have to take orders from the State Department as to how many. Like, for example, some countries have very few or little at all, right? Well, so the worldwide limits are set by Congress, and then within the worldwide limits, there are per-country limits. But can't the State Department change those limits per country when they want to? For example, based on what's going on in the world, can they say, you know what, we had allocated some for that country, but right now, zero. Am I correct? I honestly don't know the answer to the question, Your Honor. Oh, okay. So we don't know what level that is. Well, because it's not the issue in this case, right? It may or may not be. You're talking about a powerful thing when you say that we don't have jurisdiction. You know, Article 3, we have to look at that very carefully on both sides. One, so we're not over our skis and where we are, but also that people are not prevented from coming to court to seek relief. It's a sword and a shield. So that's important. I think your hypothetical would really be involving a different statutory section. It would be about allocating visas. And so, you know, right here, we're talking about adjustment of status. But it's the sine qua non for the people who are trying to get a visa. I'm about to ask the question whether or not there's an overriding situation where you say, I don't care what you're doing, no more visas from that country. Isn't that right? I think the State Department can do that, can't they? I don't know. I'm sorry. I don't know the answer to that. But I can say that when we're talking about adjustment of status, Congress saw fit to say that the adjustment of status decision just is in the discretion of the Attorney General and it falls within 1252 A to B and isn't reviewable. And so when we're talking about that issue, which is the issue here, it's a question of jurisdiction. And there is no jurisdiction to review that decision. You said Attorney General. Did you meet the Secretary of State? The Secretary of Homeland Security. I'm sorry, Your Honor. Because the statute says the Attorney General, but then the Homeland Security Act delegated that to the Secretary of Homeland Security in 2002. And so, although it says Attorney General in the statute, typically we're talking about the Secretary of Homeland Security who's ultimately making these decisions. There are no other questions? Thank you, Your Honor. Thank you very much. Mr. Bannon. Thank you, Your Honors. Judge Hyten's 8 CFR 245.2 A5 mandates the agency make a final decision on adjustment status applications. This court should look to Gonzales' 2020 opinion where a panel looked at a regulation and said, this is a mandatory duty regardless of what's in the statute. The Norton v. Sewa problem or Southern Utah wildlife, it's not an issue in this case. They've conceded that in other courts. I'm unclear why they're not conceding it here. 1255 A uses the term, it's 1255 A3 actually. A1 says it's required to send in an application. A2 says you've got to be eligible. And A3 says you have to have a visa immediately available at filing and filing only. So that's it. So there's no dispute that there was a visa immediately available, meaning their priority date was current at the time they filed their application. And I can tell you there are people with priority dates from December 2014 who currently have green cards today. But my clients don't. So this idea Wait, you said you can tell me. Is that in your complaint? It is in my complaint. And I've represented them. The idea that the metaphor of a queue of a line is completely factually inaccurate. They do not decide these cases in priority date order. The fact that my colleague would come up here and actually represent that to a court is troubling to me because that is well known. And they don't have to. Once they announce December 2014 that means they just have to make decisions on applications that were filed before that. And I do think, though my colleague wants to give no credit to the Department of State's decisions, that is a decision. They announced this. And they, by announcing it, triggered 1255A3. And 1255A does not say you have to be current at approval. This idea that it's an act of grace to keep these applications pending after retrogression is is good description. It's good argument. But it's not accurate. There is no statute, regulation, or policy that requires a visa to be immediately available at approval. The policy guide section you cited, Your Honor, does not say an immigrant visa has to be immediately available at approval. And I know the statutory terms of available versus immediately available seem like they're the same thing. They are not. They are distinct legal concepts. So this is not an act of grace. They can't deny them because they don't have a legal basis to do so. That's why their entire brief is about jurisdiction. Right? And 1252A2B1 and A2B is entitled Judicial Review of Discretionary Denials and Approvals. Discretionary. This is a legal requirement. The documents attached to the motion describe... Can I go back to this document again? Alright, so I now have the language in front of me. I'm going to read you the following words and tell me how they don't address the thing. Yes, Your Honor. If an officer, this is, again, USCIS Policy Manual, Volume 7, Chapter 6, Section C5. Quote, if an officer encounters a case in which a visa was available at the time of filing, true here, but is not available at the time of final adjudication, they represent, true here, the case should be retained, pre-processed, and adjudicated to the point of final approval. Your Honor, that talks about availability, not immediate availability, i.e. current. You can laugh at that. Yes, explain to me why those things mean different things. Because available is an estimation of how many visas are available for this fiscal year. No, wait. Available isn't an estimate. Available is available. Like, if I walked into a store and I said, is something available? They would say, well, we estimated that it would be here today, but it's not here. So, in other words, it's not available. Because when I ask you, is it available, what I'm asking you is, do you have one right now? I 100% agree with you, Your Honor. I misspoke. At the beginning, on October 1st of every year, there are 140,000 visas made available, available. In other words, in the visa store, the shelves are stocked with 140,000 plus some. Okay? That is a different concept, a different legal principle, than whether my client's priority date is immediately available. In other words, are they allowed to go into the store? They're allowed to go into the visa store when the Department of State announces, hey, the shelves are stocked, they're available, and for you, with your priority date, they are immediately available. Our proposal, which Congress agrees with, is that once you're in that store, you can have any visa that's on the shelf, as long as it complies with the overall caps, availability, and the country caps. India gets about 7,000 visas a year. I think in the two months when this priority date went forward, I think like 80,000 people applied. It's going to take a while to get through. But refusing to decide applications once they're in the store and when they are on the shelf, and I don't think my colleague disagrees that they are on the shelf right now. There are visas available. If the visas are not available, if they run out, which is what happened in 2022, which is what catalyzed these cases where I've traveled around the country without much luck, then I agree, they can't do anything. But on October 1st, they become available. And right today, under the law, you can only do 27% per quarter in the fiscal year. We are in the third fiscal quarter, and so there are, by definition, visas available. And I see my time is up. I appreciate y'all humoring me this morning, and thank you so much. Good to have you with us. We'll come down and greet counsel, and then go to the next case.
judges: Robert B. King, Roger L. Gregory, Toby J. Heytens